UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 6, 2023

LETTER TO ALL COUNSEL OF RECORD

Re: *Nina S. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 22-3293-BAH

Dear Counsel:

On December 21, 2022, Plaintiff Nina S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 7), the parties' dispositive filings[1] (ECFs 9 and 11), and Plaintiff's reply (ECF 12). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, REVERSE the SSA's decision, and REMAND the case to the SSA for further consideration. This letter explains why.

I. **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on February 18, 2020, alleging a disability onset of April 5, 2015. Tr. 233–39. Plaintiff's claim was denied initially and on reconsideration. Tr. 143–46, 154–58. On September 14, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 35–69. Following the hearing, on October 5, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 13–34. The Appeals Council denied Plaintiff's request for review, Tr. 1–7, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II. **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs." Here, Plaintiff filed a motion for summary judgment and Defendant filed a brief.

[2] 42 U.S.C. §§ 301 et seq.

*Nina S. v. Kijakazi*
Civil No. 22-3293-BAH
September 6, 2023
Page 2

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of April 5, 2015 through her date last insured of December 31, 2020." Tr. 18. At step two, the ALJ determined that Plaintiff suffered from severe "chronic fatigue syndrome, anxiety, depression, [and] post-traumatic stress disorder (PTSD)." Tr. 19. The ALJ found that Plaintiff's non-severe impairments included, but were "not limited to[,] Raynaud's phenomenon, gynecological impairments, vision disorder (corrected with glasses), keratoconjunctivitis sicca (corrected with plugs in eyes), dry eye syndrome and allergic rhinitis." *Id*. At step three, the ALJ determined that, through the date she was last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(b) except the claimant cannot be exposed to extreme cold. She can perform simple, routine, repetitive tasks not a production rate pace, defined as no assembly line work and no hourly quotas. The work would be at the same pace throughout the day. The claimant can have occasional contact with coworkers, supervisors, and the public.

Tr. 20. The ALJ determined that Plaintiff could not perform past relevant work as a military or civilian intelligence specialist but could perform other jobs existing in significant numbers in the national economy, such as the job of small parts assembler (DOT[3] #739.687-030) and electrical assembler (DOT #729.687-010). Tr. 26–27. Thus, the ALJ determined that Plaintiff was not disabled. Tr. 27.

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises two arguments on appeal. First, she argues that the ALJ erred at step three by providing an inadequate analysis of whether her severe mental impairments met or equaled certain listed disorders in the Listing of Impairments (the "Listings") at 20 C.F.R. Part 404, Subpart P, Appendix 1. ECF 9-1, at 6–10. Specifically, Plaintiff avers that the ALJ erred in evaluating whether she satisfied the criteria relevant to Listings 12.04, 12.06, and 12.15. *See id.* Second, Plaintiff contends that the ALJ erred in determining that she can perform sedentary work on a regular and continuing basis. *Id.* at 10–12. Defendant counters that the evidence "reasonably supported the ALJ's finding that Plaintiff's mental limitations were not of Listing-level severity." ECF 11, at 12. Defendant also avers that the ALJ explained how the evidence "support[ed] her determination that Plaintiff would be capable of performing mentally (and physically) restrictive work on a regular and continuing basis without the need for additional limitations despite her mental impairments." *Id.* at 15.

The Court begins by considering Plaintiff's argument that the ALJ erred by failing to conclude that Plaintiff met or equaled Listings 12.04, 12.06, and 12.15. ECF 9-1, at 6–10. The SSA's Listings describe, "for each of the major body systems[,] [the] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity. . . ." *Figgs v. Saul*, No. 1:20-CV-00334-JMC, 2021 WL 3930708, at *5 (D. Md. Sept. 2, 2021) (quoting 20 C.F.R. § 404.1525(a)). At step three, an ALJ determines whether a claimant's impairments are severe enough to meet or medically equal a particular Listing. *See* 20 C.F.R. § 404.1525. "In evaluating a claimant's impairment" under the Listings at step three, "an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

Relevant to this case, Listings 12.04, 12.06, and 12.15 pertain to "Depressive, bipolar and related disorders," "Anxiety and obsessive-compulsive disorders," and "Trauma- and stressor-related disorders," respectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.15. The

criteria relevant to meeting or equaling each of these Listings is delineated in three separate sections ("Paragraphs") at each Listing. 'Paragraph A' requires medical documentation of the disorders relevant to each Listing. *See id.* §§ 12.04A(1), 12.06(A)(1), 12.15A. 'Paragraph B' is identical in all three Listings and requires the "[e]xtreme limitation of one, or marked limitation of two," of four "areas of mental functioning," which include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* §§ 12.04B, 12.06B, 12.15B. Lastly, 'Paragraph C' is identical in all three Listings and requires a claimant's mental disorder to be "serious and persistent," meaning that the claimant must have "a medically documented history of the existence of the disorder over a period of at least 2 years," as well as:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes [a claimant's] symptoms and signs of [their] mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life (see 12.00G2c).

*Id.* §§ 12.04C, 12.06C, 12.15C. Listings 12.04, 12.06, and 12.15 can be met or equaled by: (1) satisfying the respective Listings' 'Paragraph A' and 'Paragraph B' criteria or (2) satisfying the respective Listings' 'Paragraph A' and 'Paragraph C' criteria. *See id.* §§ 12.04, 12.06, 12.15.

Here, after determining that Plaintiff suffered from severe chronic fatigue syndrome, anxiety, depression, and PTSD, the ALJ examined whether Plaintiff's mental impairments met or medically equaled the criteria at Listings 12.04, 12.06, and 12.15. Tr. 19–20. With respect to the Listings' 'Paragraph B' criteria, the ALJ determined that Plaintiff possessed: (1) a "mild" limitation in understanding, remembering, or applying information; (2) a "moderate" limitation in interacting with others; (3) a "moderate" limitation in concentrating, persisting, or maintaining pace; and (4) a "mild" limitation in adapting or managing herself. *Id.* The ALJ then noted that because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the 'Paragraph B' criteria relevant to Listings 12.04, 12.06 and 12.15 were not satisfied. Tr. 20. Lastly, the ALJ "considered whether the 'paragraph C' criteria of 12.04, 12.06, and 12.15 were satisfied." *Id.* The ALJ found that these criteria were not established by the evidence of record because Plaintiff "has not required hospitalization or inpatient treatment for her mental impairments. She can perform self-care[.]"[4] *Id.*

As an initial matter, a careful review of the ALJ's decision makes clear that their evaluation of Plaintiff's 'Paragraph B' limitations was adequately supported by citations to the evidence of record as well as Plaintiff's testimony. Tr. 19–20. Plaintiff avers that the ALJ erroneously failed to assign "marked" limitations to certain areas of mental functioning despite an alleged "plethora"

---

[4] The ALJ's sentence related to "self-care" does not end in a period. Tr. 20. It appears that this sentence may have been cut short due to a typographical error.

of evidence indicating that such findings were warranted. ECF 9-1, at 6–9. But, while Plaintiff contends that the ALJ misapplied evidence which allegedly supports "marked" findings in these areas, she does not contend that the ALJ failed to take note of this evidence *entirely*. As such, her argument amounts to a request for the Court to reweigh evidence at step three. Plaintiff's argument must fail for this reason, as this Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

Plaintiff's argument is not salvaged by the fact that her attending physician, Dr. Mya Sabai, opined that "greater limitations" were warranted in each of the four areas of mental functioning. ECF 9-1, at 7–10. The ALJ determined that Dr. Sabai's opinion was unpersuasive because "the record as a whole is inconsistent with the marked limitations Dr. Sabai assessed," and because Dr. Sabai "completed a check-list style form and provided no rationale for her findings." Tr. 25. For claims, such as Plaintiff's, filed after March 27, 2017, such an assessment of the weight to which a medical opinion is entitled is proper. *See, e.g.*, *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (explaining that, pursuant to 20 C.F.R. § 404.1520c, an ALJ must evaluate the "supportability" of a medical opinion and its "consistency" with the remainder of the evidence). Plaintiff disagrees with the ALJ's assessment, arguing that the rationale for Dr. Sabai's opinion was "clear from her treatment records" and that "Dr. Sabai's assessments should have been given more weight because she was [Plaintiff's] treating provider for years[.]" ECF 9-1, at 9–10. However, the ALJ explicitly applied correct legal standards in discounting Dr. Sabai's opinion, and the Court must "defer to the ALJ's assignment of weight [to medical opinions] unless [it is] not supported by substantial evidence[.]" *Dunn v. Colvin*, 607 F. App'x 264, 271 (4th Cir. 2021). Because the ALJ based their rejection of Dr. Sabai's opinion upon such evidence, Plaintiff's argument is unavailing.

However, the assessment of 'Paragraph B' criteria does not end the Court's inquiry here. As explained above, a claimant's mental impairment can meet or equal Listings 12.04, 12.06, or 12.15 without satisfying the 'Paragraph B' criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.15 (providing that a claimant may meet or equal the Listings by satisfying both 'Paragraph A' and 'Paragraph C'). Upon review of the record, the Court agrees with Plaintiff that the ALJ erred in assessing the 'Paragraph A' and 'Paragraph C' criteria of these Listings.

With respect to 'Paragraph A,' the ALJ provided no analysis. *See* Tr. 19–20. A review of the record suggests, however, that Plaintiff's mental impairments may satisfy the criteria under this paragraph. For example, 'Paragraph A' of Listing 12.04 requires the documentation of at least five out of nine enumerated symptoms of depressive disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04A(1). Here, the ALJ considered treatment records related to "depression," "chronic fatigue," "insomnia," and "restless sleep." Tr. 32. The ALJ also explicitly determined that Plaintiff had moderate difficulties in concentrating, persisting, and maintaining pace. Tr. 20. Moreover, Plaintiff indicated that she experienced "[p]oor appetite or overeating" on "several days" over a two-week period in September 2020. Tr. 1718–19; *see also* Tr. 1891 (noting that, in

2020, a "brief conversation with the patient was conducted to provide information about the patient's weight & BMI that indicates overweight/obesity."). These findings and evidence appear to align with at least five of the criteria set forth at Listing 12.04. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04A(1) (listing, among other things, depressed mood, appetite disturbance with change in weight, sleep disturbance, decreased energy, and difficulty concentrating or thinking as findings which can satisfy 'Paragraph A').

These findings and evidence are also relevant to 'Paragraph A' at Listing 12.06, which requires the documentation of at least three or more of the following symptoms of anxiety disorder: (1) restlessness, (2) easily fatigued; (3) difficulty concentrating; (4) irritability; (5) muscle tension; and (6) sleep disturbance. *See id*. § 12.06A(1). As discussed above, the record contains evidence suggesting that Plaintiff experiences disturbed sleep, fatigue, and difficulty concentrating, so Plaintiff also appears to satisfy Listing 12.06's 'Paragraph A' criteria. *See id*. With respect to Listing 12.15's 'Paragraph A' criteria for the documentation of a trauma-related or stressor-related disorder, the record contains a narrative summary describing how Plaintiff "was exposed to the threat of death numerous times while living on and visiting multiple forward operating bases in Iraq due to incoming indirect fire/mortar attacks by enemy forces[.]" Tr. 2363. The narrative summary describes how Plaintiff: (1) involuntarily relived this trauma through memories; (2) avoided reminders of the trauma; (3) experienced disturbances in mood and behavior; and (4) experienced increased sensory arousal due to the trauma. Tr. 2363–72. This evidence appears to satisfy Listing 12.15's 'Paragraph A' criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.15A (requiring exposure to actual or threatened death, serious injury or violence; an involuntary re-experiencing of a traumatic event; the avoidance of external reminders of the event; a disturbance in mood and behavior; and increases in arousal and reactivity).

The ALJ's discussion of the 'Paragraph C' criteria under Listings 12.04, 12.06, and 12.15 was also insufficient. The ALJ determined that Plaintiff failed to satisfy 'Paragraph C' because she has not required hospitalization or inpatient treatment and can perform self-care. Tr. 20. This analysis misconstrues the criteria relevant to 'Paragraph C', which, as discussed above, provides that a claimant's mental impairment must: (1) be medically documented over a two-year period; (2) be met with treatment, therapy, psychosocial support, or a structured setting which is ongoing and diminishes symptoms of the disorder; and (3) cause a claimant to have only a minimal capacity to adapt to changes in environment or demands that are not already part of the claimant's daily life. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04C, 12.06C, 12.15C.

As with the criteria relevant to 'Paragraph A', the record permits a finding that Plaintiff satisfies the 'Paragraph C' criteria of Listings 12.04, 12.06, and 12.15. Plaintiff's mental impairments appear to be adequately documented, as the ALJ noted that Plaintiff "was treated at the VA for depression, anxiety, and PTSD" as early as August 2017. Tr. 22. Moreover, the ALJ noted that Plaintiff's "own treatment records showed that [her] mental impairments were stable with medication." Tr. 25. With regard to adapting to changes in her environment, the record reflects Plaintiff's inability "to temporarily shift to a daytime awake schedule," Tr. 2256, her "becoming tearful for no[] particular reason at least once daily," Tr. 2252, and her "anger and resentment that lingers from the military," which Plaintiff experiences "1-3 times daily." Tr. 2224;

*see also* Tr. 2380 ("My inability to adapt to changes in my work environment was a major factor in why I had to stop working in 2015."). While the ALJ may have disagreed with Plaintiff about the significance of this evidence, the ALJ was nonetheless required to explain why the evidence did, or did not, satisfy the relevant Listing criteria. *See Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (explaining that an ALJ's duty to compare symptoms to Listing criteria is "triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments."). Because the ALJ failed to do so, remand is warranted.

In sum, the ALJ failed to adequately explain why Plaintiff failed to satisfy the 'Paragraph A' and 'Paragraph C' criteria relevant to Listings 12.04, 12.06, and 12.15. This Court has recognized that "if the 'medical record includes a fair amount of evidence' that a claimant's impairment meets a listing, the ALJ must discuss the relevant listing and provide a coherent explanation regarding whether the claimant's impairments meet or equal it." *Angela C. v. Kijakazi*, No. TJS-21-0349, 2022 WL 601098, at *2 (D. Md. Mar. 1, 2022) (quoting *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013)). Here, despite a record containing considerable evidence which appears to satisfy the criteria of the Listings at issue, the ALJ failed to provide a "coherent explanation" of the evidence's applicability (or lack thereof). *Id.* The Court expresses no view on whether Plaintiff satisfies these Listings, given that only the ALJ may weigh conflicting evidence and make credibility determinations. *See Craig*, 76 F.3d at 589. But, because a more thorough step-three analysis may be dispositive of whether Plaintiff is entitled to benefits in this case, the ALJ must provide a more fulsome discussion on remand of how the evidence does or does not support a finding that the criteria relevant to Listings 12.04, 12.06, and 12.15 are satisfied.

In remanding for further analysis, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct. As the case is being remanded on a separate ground, I need not address Plaintiff's argument that the ALJ erred in determining that she could perform sedentary work on a regular and continuing basis. On remand, the ALJ is welcome to consider this argument, if necessary, and make any required adjustments to the opinion.

### V.     CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 9, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/
Brendan A. Hurson
United States Magistrate Judge